May it please the court, your honor, nice to see you all and Ms. Horowitz, it's a pleasure to see you. Just in terms of the argument, your honor, if I could reserve two minutes for my rebuttal, if you don't mind, I would appreciate that. Yes. Thank you very much. And so just in terms of a road map to my argument, I'm mainly going to focus in on the search argument in terms of the bathroom that we raised in our brief. I did raise some other arguments in regards to the jury trial and sentencing. However, I plan on submitting on those unless the court has some questions on that. So the main thing was I was going to address was a search component of that. In terms of the main issue in this case, we believe that the district court exceeded the bounds of the community caretaking function. By doing so in its written order, essentially granting the officers the ability to enter the bathroom based upon the community caretaking function without any analysis to that. So, counsel, what I'd like to ask you is this. Assume for the moment that we were to agree with you that the caretaking exception doesn't justify opening the door to the bathroom. The government had also argued and there was significant testimony about whether a buoy sweep of the bathroom was justified. And the district court chose not to address that, instead addressing the caretaking function. So what would you urge us as the resolution or as to the result? If we were to agree with you that the caretaking function was inapplicable, but we were to find on the record that a buoy sweep of the bathroom could be appropriate. If the court if the district court had reached it, what would you urge us to do? Thank you. And so I in my analysis of it, too, I think the proper analytical framework would be. And I think the case, the Lemus case, did a very good job of explaining that where there is a buoy sweep. You have kind of the first protective sweep when it's. I'm trying to remember the the words they use, but essentially it's adjoining adjoining rooms. They can do that first protective sweep in any non adjoining rooms is also can be a buoy sweep, more of a protective sweep, but it's more limited in scope. And so and so in terms of the bathroom and so if the court believes a buoy sweep would be appropriate, that would be a non adjoining room, mainly because Mr. Fisher was arrested outside in the hallway of his hotel room in the adjoining room would have been the living area of that of that room. And so the district court did kind of find that and said that there was a OK to do a protective sweep in that situation. I would argue if the court thinks that a buoy sweep would be appropriate for the bathroom, it would come under the rubric of the non adjoining room that Lemus talks about. And so in that respect, it had to be a reasonable belief that someone was in the bathroom. And if this court believed that it was reasonable, someone could have been in that bathroom, they could have done a protective sweep. Then the scope of that is limited. Well, counsel, I we were finally able to get the video and I looked at the video yesterday and the looking at the video from the front door of the room. You can see into the toilet and you can see the baggy. And that's what the judge found. I don't think we would be able to make findings as to whether a buoy sweep were appropriate or not. But if we were to agree with you that the caretaking function wasn't applicable, should we remand it for findings from the district court on whether there was a buoy sweep of the bathroom and whether it was appropriately limited in scope? I believe so. Yes, your honor. So I'm sorry. I went a long way around trying to answer that for you. But I think in terms of the remedy is what you're asking that a further factual finding would have to be made. And the proper way of doing that would be to remanding it back to the district court to determine whether or not that would that take that took place. And just to clarify. I'm sorry. Difference in this analysis, whether or not at the time the officers entered the room, whether the bathroom door was open. And I'm sorry, I couldn't understand your question, your honor. Would it make a difference in the analysis when the officers entered, whether or not the bathroom door was open and you could look right inside the bathroom? You know, potentially so. And so I think it depends on I'm assuming you meaning the same factual scenario where he was arrested outside the hall in the hallway of the room. And so I think that does make a difference because once that door is closed and the officers actually asked Miss to put the dog in there and close the door. I think that does make a difference in terms of any evidence at the time the defendant exited and the officers went in, whether or not that door was open. It is my understanding when the when Mr. Fisher came out, the door was open. And then when the officers entered, the door was open and they asked Miss to put the dog that was barking into the bathroom. How could they not have observed what was in the waste can in the bathroom? Well, it's just that they didn't get close enough in there when they were doing their staff function to see inside that room is what my understanding of that was, is that they were outside the room asking people to come out. And then when they actually entered the room, the door was actually closed. But from the videotape we see, maybe I'm misunderstanding it, that you're standing outside the bathroom and you can look in and if the door is open and you can see the trash can. If I recall correctly, I think that videotape was taken after the fact, if I remember correctly. But we have no evidence that the trash can was moved. And so the question is, you know, if the door is open, can't you see everything? It seems to me if the door is open, you can see the trash can with the bag in it. Right. Yeah, no, I understand. I just, in terms of the video, I just don't know for sure if that video was taken after the fact. Well, in your discussion of Bui, you began by emphasizing that the bathroom was a non-adjoining room to where the arrest took place. And you're looking at the layout of it and you've got, you know, they arrested him just outside the door, right? He came to the door. And so you've got the door to the hotel room. He's just outside it. And the door to the bathroom is right there, like within a foot or two of the door to the hotel room. Does it really make sense to sort of draw these? It seems like you're putting a lot of weight on the fact that he was just over the threshold rather than just inside it. And on the fact that the bathroom was a separate room, even though it was an immediately adjacent separate room. And does it really make sense to, for the analysis to turn on those kinds of facts? I believe so, because like I was mentioning, if it's a non-adjoining room, the scope is limited to what the officers can observe. So if they go, if it's a non-adjoining room, the law essentially says that you can only look in areas that a person could be hiding. And so you're not supposed to look in every nook and cranny of that area. So counsel, I mean, I think you're not supposed to look in any nook and cranny of an area during an adjoining room buoy sweep. But there's no doubt that a person could have been hiding in the bathroom. I mean, that doesn't mean a person was or that the factual findings on that were made. But there's no doubt that a person could have been hiding in the bathroom and would have been like one second away from the officers in this layout. Right? Yes, I would agree with you. I think that's a reasonable assumption and a reasonable officer could have had that assumption regarding that. And so I think they would have had the right to look inside that bathroom, but not to look in areas that did not contain a person. So for purposes of the toilet, not looking in a toilet, because a person's not going to be in a toilet, or looking in the waste can. No, but in a shower, they'd have to look in the shower, which is immediately behind the door, the door's open, correct? Correct. Absolutely. And to do so, you have to physically go in there and pull the curtain back and pass by this trash can in the toilet, which is right there. Understood. And so I think the distinction I'm trying to say is if that was an adjoining room, you're exactly right. But it's limited to just areas someone can see or where there would be a person hiding. And so if the officers see, for instance, the toilet and see the shard of methamphetamine in there or the wastebasket, and if it's impermissible because it goes beyond the scope, that that should have been excised from the warrant in terms of... But counsel, there's a difference between, to use the famous example, there's a difference between moving the stereo to see the serial number, as opposed to when you're looking for someone, seeing that there's actually a stereo in the room. I mean, plain view does not require the officers to figuratively or literally put on blinders when they're looking for a person, if at the point where they're entitled to look into the bathroom or look in the shower without making an effort, they see something in the trash can or the toilet. That's the archetypal plain view, right? They're not required to avert their eyes if it's right there. I would agree, especially in the first instance of the buoy sweep. Essentially, an officer can look in every instance where there may be evidence or there may be firearms. And so, especially in a situation where it is immediately adjacent to the arrest. Counsel, you've used your time, but we have a lot of questions, so we'll give you a couple of minutes for rebuttal. Thank you.  Thank you, Your Honor. Your Honor, may it please the Court, Kate Horowitz for the United States. I'd like to start with an insurmountable hurdle to appellant's issue on suppression, which is the actual warrant. Notably, at no point during the opening brief does he discuss the warrant or its validity, if it were to be that all the facts or all the evidence seen in plain view, if all that evidence was excised, the warrant stands independently sufficient. But, Counsel, putting aside for the moment Mr. Ball's argument, if one is using the independent source doctrine with regard to a warrant, doesn't there have to be both testimony and a finding that but for the excised evidence,  and I read the transcript of the hearing pretty carefully, and I don't see any question to any of the officers along the lines of, if you hadn't seen the baggie or the shard, would you still have sought a warrant? And there's no finding by the judge. The judge said there would have been probable cause absent the excised or the putatively excised information, but there's no finding by the judge that the officers would have sought a warrant had they not seen the shard or the baggie. And isn't that absolutely required under the independent source doctrine? Your Honor, I'm not sure. And frankly, that's because these issues were not fully developed below because the appellant and the defendant in the trial court never raised the warrant as an issue. You're right that the district court at page 24 did find that if the plain viewed evidence had been excised, the warrant was sufficient in and of itself to establish probable cause. But these issues have not been briefed. They've not been argued. It's the first time on appeal in the reply brief at page 5 that the appellant says for the first time, well, the warrant's not sufficient without the shard in the toilet and the wet plastic bag in the trash can. So frankly, I would say that he has waived his argument. It was well known that this was an issue that was going to be addressed both by the district court. He did not file the reply brief after the issue was raised. But counsel, the defendant clearly challenged the search of the bathroom, right? Certainly. And clearly argued that what would be in the bathroom should be suppressed and that there were fruits of the poisonous tree, right? Yes. And one of the fruits. I mean, it doesn't it doesn't take more than one plus one equals two to find that one of the fruits of the poisonous tree, if counsel for the defendant is correct, is in fact the warrant which had in it the evidence of the shard and the baggy. Right. Which the district court actually specifically addressed. Yes. And so, Judge Bennett, assuming that the trial court can only rely on the warrant, the excise warrant, I'll call it, based on testimony specifically from the officer saying we would have sought a warrant absent these excised evidence, then we would ask that it be remanded so that the court can can have that factual finding. So I would like you to address, counsel, the district court's finding that the community caretaking function is applicable here. So, I mean, we all know that search absent a warrant are presumptively unreasonable. The exceptions are limited in scope. And there's no question that to preserve the safety of an individual, the community caretaking function could be applicable. And just what is it here where admittedly there was a large dog in the in the bathroom and leaving the large dog in the bathroom could impact the dog's safety. But what was there about a Supreme Court or our case law on the community caretaking function that would implicate that here because of a dog in the bathroom? And frankly, Judge Bennett, I would agree that it's not a perfect fit because essentially the emergency situation arose in the midst of the execution of a valid arrest warrant. And the community caretaking function cases really stem from the situation where police are called out to a house based on 9-1-1 and they're investigating. So it's not a perfect fit. But that said, while they were executing the warrant, Fisher essentially created an emergency situation by refusing to come out and engaging in a standoff. So I don't I don't I don't question the facts that led up to it. But what I'm talking about is what's the emergency situation that justified the officers going in to the bathroom? Don't you need a finding from the district court that this would have been justified by a buoy sweep? And isn't that, in fact, the way you or your colleagues presented the testimony at the suppression hearing? Yes, Your Honor, and I believe that the the bathroom search and the hotel bedroom search were justified under both searches articulated in buoy. And I'm happy to get to that under the protective or the community caretaking function argument. The district court made general findings regarding the dog being in the room, the officers being surprised by the presence of a third party who is unknown. And frankly, the testimony during the suppression hearing support that the danger posed by trying to excise a dog and an unknown person while simultaneously controlling a room where a standoff had just been engaged in posed significant dangers to both law enforcement and the community at large because the hotel in and of itself presents unique dangers. When you look at excerpts of Record 434, U.S. Marshal Pete Thompson testified that the hotel is transient in nature in the sense that people are coming and going constantly, both in the parking lot and in the hallway of the hotel. So we take extra precautions when we're dealing with a hotel. At excerpts of Record 476, the officers testified that they put the dog in the bathroom because, quote, we had to figure out how we were going to get that dog controlled so it didn't bite anybody. So it's clear from the testimony in the record that the motivations of segregating the dog from the unknown person or persons in both the hotel room and the bathroom was simply to protect both officers and hotel guests. OK, but counsel, I think the testimony is that the dog got put in the bathroom and I may be wrong here, but the first time the shard and the baggie were actually seen by an officer who testified was when the door to the bathroom was then later opened to get the dog out, right? Yes, when the dog, the trash can and the shard were seen as the canine officer reached in to get the dog and the shield officer was holding outside the door. So would you agree with your colleague that if we reject the community caretaking function that we should remand or do a limited remand for the district court to address in the first instance whether a buoy sweep of the bathroom was justified? No, Your Honor, and I'll tell you why. I think that, and I'm guilty of this in my response brief, but in Zimas, this court warns that really because it is confusing, the two searches that are identified in buoy need to be separately named and discussed. So under the first, which is the protective search incident to arrest, there's no reasonable suspicion required so long as it's a search of the adjoining area, the immediately adjoining area that could contain a person as Judge Miller stated. And the bathroom, which is mere, I mean, less than maybe two feet from the door, the precipice of which Fisher was arrested, is absolutely immediately adjoining that place of arrest. Now, when you look to Limas, it cites a series of cases, including a district court case, Thomas, finding that a bedroom 15 feet down a hallway is sufficiently immediately adjoining to warrant the first kind of search, the protective search incident to arrest, and that is independently sufficient to authorize the officers to go into the bathroom. And that your view is that we can make those findings on appeal with regard to the bathroom, notwithstanding the fact that the district court expressly chose not to? I believe yes, based on the record, based on exhibit three, which is the suppression hearing video. Now, again, this was not raised, the immediately adjoining area was not specifically addressed in the opening brief. And this exhibit has not been part of the appellate record. I'm happy to add it. And of course, this court can consider it. But that in and of itself is sufficient. If there are no video is not part of the record. No, the video. Well, excuse me. The video is not part of the appellate record. Your honor. It hasn't been included in the excerpts of record. It is, of course, part of the district court's record and may be considered by this court. Thank you. With that, I see my time is up. Thank you, Your Honor. All right. Thank you, Counselor. Mr Ball will give you two minutes. You're not, you have to unmute. Thank you very much. And so I just wanted to make an argument, at least in terms of the community caretaking function. Just a response to counsel on that is that we do not think that it applies. I think that it was the court exceeded the bounds on that. I think the Rodriguez court did a very good job in stating to the court that there's got to be an urgency, safety to the general public, balanced with the property rights of the people. The court looks at the totality of circumstances in making that determination. So I would just disagree with counsel that that was appropriate. I do know that in the record, the officers, Mr. Thompson did state that when they had the officers there, they had 11 officers and they cleared the hallways so no one could come out of the rooms. If I recall correctly, that they were going to make sure that there was no other people that would be part of that when they made that knock and announce on that door. So I think that there was obviously a significant police presence to make sure that it was in place and make sure the public was not at danger at that point. And there was no urgency at that point for them to use the community caretaking function. So I just think that it was inappropriate and believe that the case should be remanded back to the district court to essentially develop the facts more sufficiently in terms of the police sweep like was mentioned before. So I think that's a proper remedy for this court. What do you think they should have done once they've put the dog in the bathroom, closed the door? Now there's a dog in the bathroom. They can't just leave it there indefinitely. What should they do? Well, at that point, is it emergency to let the dog out of the bathroom at that point? The officers went and started doing the search warrant. I believe the search warrant was done within a matter of four hours. So I just don't think that there was any emergency need not to conclude with a search warrant and finish it up with a search warrant. All right. Thank you, counsel. We thank counsel for their helpful arguments, and this case will be submitted.
judges: Murphy, Bennett, Miller